**SAMPSON–MILLER ASSOCIATED COMPANIES, Inc. and Ryan Homes, Inc., Pennsylvania corporations**

v.

**WASHINGTON HOMES, INC., a Maryland corporation, and William J. Harnett, an individual.**

**Civ. A. No. 69–537.**

United States District Court

W. D. Pennsylvania.

Aug. 27, 1969.

Robert C. McCartney and Edward G. O'Connor, of Eckert, Seamans & Cherin, Pittsburgh, Pa., for plaintiffs.

Harry W. Turner and Michael C. McLean, of Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

This case involves a novel question of the application of the Pennsylvania statute conferring jurisdiction on the courts of Pennsylvania over foreign corporations not registered as doing business in Pennsylvania which are found to be "doing business" despite such failure to register. Pennsylvania Business Corporation Law, 15 P.S. § 2011(B). Defendant corporation moves to dismiss the action as to it on the grounds of lack of jurisdiction over the person under F.R.Civ.P. 12(b) (2) and (5). Discovery in support of jurisdictional grounds has been employed and we believe that there is little dispute over the essential facts necessary to determine the issue but we have found no controlling case law directly on the legal issue.

Defendant is a Maryland corporation with its principal office in that state. It is engaged in the development of residential real estate tracts in Maryland. It is not registered to do business in Pennsylvania and it is not engaged in the residential real estate business in Pennsylvania. The corporation does not maintain an office, mailing address or a telephone listing in Pennsylvania.

The president and chief executive officer of the corporation, who with members of his family own the controlling stock interest in the corporation, resides in Pennsylvania. He receives occasional telephone calls concerning his business at home, and drives a company automobile in Pennsylvania. We consider this as occasional and not sufficient for our purposes.

The most significant grounds asserted to establish "doing business" in Pennsylvania are the admitted multiple contacts of the defendant corporation with other parties in Pennsylvania for the purpose of financing the corporation's activities. Stock escrow agreements have been made, mortgage debt to a Pennsylvania bank has been assumed, insurance and pension plan arrangements have been negotiated and placed through a Pittsburgh agency. A great deal of activity in Pennsylvania centered around a proposed public issue of the corporation's stock. It negotiated with stock brokers in Pittsburgh and secured a letter of intent for underwriting the issue. The proposed stock issue was to be offered for sale in Pennsylvania and payment for and delivery of the stock was to be made in Pittsburgh. Its Pittsburgh counsel prepared and sent out many agreements and documents concerning this issue. Counsel prepared an S.E.C. Registration Statement in connection with this stock issue which was executed by the corporate officers in Pittsburgh. The Registration Statement designated the president of the corpora-

tion and his Pennsylvania residence as the person and place for receipt of all notices under the registration requirements. A Preliminary Prospectus for the stock issue was printed in Pittsburgh. A Pittsburgh bank was designated to act as the stock transfer agent for the public shares to be issued.

Various other contacts, meetings, negotiations and transactions in and around Pittsburgh have been noted. The defendant corporation does not deny the general nature of the activities in Pennsylvania. Defendant argues that it is not the "quantity" of acts that take place in Pennsylvania, but their "quality". It draws a distinction between the corporate "objects" or "purposes", which are the development of real estate in Maryland, and the corporate "powers" or "means" by which the corporate purposes are carried out, that is the power to raise capital by stock issues, borrowing, mortgaging, and other "incidental" activities. Defendant argues that engaging in such functions in Pennsylvania, regardless of their extent, does not constitute "doing business".

However, neither the plain words of the statute nor the public policy expressed thereby indicates such a distinction.

For what other purpose than the realization of a pecuniary benefit were the negotiations and agreements with stock brokers and banks and the preparation of a Registration Statement and a Prospectus for the public issue of its stock? And for what purpose was the designation of a stock transfer agent except to provide for continuing public trading in its stock? And it is to be noted that the statute speaks in the alternative, for realizing pecuniary benefit "or otherwise accomplishing an object." We can come to no other conclusion than that this corporation entered the Commonwealth of Pennsylvania and performed a series of acts to accomplish the object of a public issue of its stock. As such, it was "doing business" in Pennsylvania under the terms of the statute. A com-

parable situation was shown in Crane Company v. Federal Hydronics, Inc., 240 F.Supp. 180 (W.D.Pa.1965) where the negotiation of a patent licensing agreement with a Pennsylvania firm and semi-annual visits to audit the licensee's records of sales were sufficient to show the "doing business" required, because the purpose of the transaction was to realize a pecuniary benefit.

As a further aid to the construction of the statute we note that Sec. 2011(D) excludes certain corporate activities from the concept of "doing business" for the purpose of establishing the jurisdiction of the courts in the Commonwealth. The registration, issue and transfer of its securities is not one of the excluded activities. However, Sec. 2001(B) of the Pennsylvania Business Corporation Law does specifically enumerate certain activities which do not constitute "doing business" for the purposes of the registration requirements of the act but not necessarily for the purposes of Sec. 2011. Among the activities so listed are maintaining offices for the transfer, registration and exchange of its securities.

■■ A second ground advanced in support of defendant's motion to dismiss is the requirement that such jurisdiction is limited by the statute to "any action arising within this Commonwealth". This language has been judicially construed to mean cause of action arising within this Commonwealth in a personal injury action arising out of an accident outside the Commonwealth. Hartley v. Sioux City & New Orleans Barge Lines, Inc., 379 F.2d 354 (3rd Cir. 1967), but we doubt that such a restrictive application will be made by the appellate courts in Pennsylvania in view of the language of Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 240 A.2d 505 (1967), which noted that the 1963 amendment to the statute eliminated the former requirement that the cause of action must arise from "acts or omissions" in Pennsylvania. In any event, we are satisfied that the contractual relations which give rise to this cause of action, have substantial relationship to Penn-

sylvania, arising out of their negotiation, preparation, and in some part their execution in Pennsylvania. While the contracts basically concern real estate interests in Maryland, the suits are transitory and need not be commenced in that state. If it were necessary, which we think is not, we believe that the evidentiary matters show sufficient and substantial connection of the contractual matters in dispute with this state to establish a cause of action arising in this state.

Defendant's motion to dismiss will be denied.